SAMUEL S. Cox, Administrator of the Estate of GEORGE H. Cox, Deceased, Appellant, v. THE CHICAGO & NORTHWESTERN RAILWAY COMPANY.

**Negligence:** PROXIMATENESS: *Rules.* The fact that a train is running at a negligent speed will not entitle to recovery for the death of a fireman, in the absence of evidence that the death would not have occurred had proper speed been used.

SAME. A rule provided for certain speed in passing over switches. It appears that its sole purpose was to guard against collisions within station limits An engineer caught up a tree lying across the track without knowing it, and carried it on until a switch was reached. There it came in contact with the switch and rails and derailed the engine, killing the fireman. *Held*, the speed at the switch is immaterial, for it appears that carrying the tree was the proximate cause of the accident.

SAME. The rules of the company provided that, whenever violent storms prevailed, trackmen should carefully examine the track; that station agents should see that the foreman was on hand with his men to protect the track; and that track foremen should immediately, on the occurrence of such storms, take their men, and proceed over their sections, and, if any place was found unsafe, flag approaching trains. A storm having blown a limb upon the track, a locomotive picked it up, and carried it into another section, where it derailed the train, within about forty minutes after the storm began. After the train had passed the section where it picked up the limb, but within a little over twenty minutes from the beginning of the storm, the trackmen were out inspecting said section. *Held*, that defendant was not negligent in not causing the section to be examined in advance of the coming of the train.

**Appeal:** NOMINAL DAMAGES: *Harmless error.* While a verdict for one dollar for causing the death of a fireman, is not warranted, it will not be disturbed where there should have been no recovery whatever.

SAME: *Review.* Such a verdict is, in fact, a verdict for defendant, hence, on appeal of plaintiff, he is not confined to urging the smallness of the recovery, but may present any point which he could have urged had the verdict been for the defendant.

*Appeal from Clinton District Court.* — HON. P. B. WOLFE, Judge.

THURSDAY, OCTOBER 7, 1897.

THIS is the second appeal in this case. See 90 Iowa, 54. The action is to recover damages resulting from the death of George H. Cox, which is alleged to have been caused by certain acts of negligence upon the part of the defendant while said deceased was in the employment of the defendant as a locomotive

fireman. The defendant answered, denying generally, and trial was had to a jury, and a verdict returned in favor of the plaintiff for one dollar. Plaintiff's motion for a new trial being overruled, judgment was entered on the verdict, from which judgment plaintiff appeals.—*Affirmed.*

*Walliker Bros.* for appellant.

*Hubbard & Dawley* for appellee.

GIVEN, J.—Plaintiff assigns as errors the overruling of each ground of his motion for a new trial, and the refusal to give certain instructions asked. There is but little contention, if any, as to either the law or the facts. The following will be a sufficient statement of the facts for an understanding of the questions to be considered: On and for some time prior to July 12, 1892, the deceased was in the employment of the defendant as a fireman on a locomotive engine. On the evening of that day, he was firing an engine drawing a train of freight cars eastward, to Clinton, John Fisher being the engineer. The train was stopped at De Witt for a short time, from whence it was intended to run past the intervening stations of Malone and Low Moor, to Clinton, without stopping. While at De Witt, a violent wind and rain storm from the northwest prevailed, but it partially subsided by the time the train started east, namely, about 8:20 o'clock. The train passed Malone without stopping. Immediately east of a bridge over Brophy creek, about two miles west of Low Moor, small branches and one or more large limbs were blown from some trees immediately north of the railroad, onto the track. Unknown to the engineer, a large limb was caught up by the engine, and carried along until the west switch at Low Moor was reached. When the limb thus

carried came in contact with the blocking and rails at the switch, it caused the front wheels of the engine to leave the track, and, although everything was done that could be to stop the train, the drive wheels also left the track, and the engine turned over, by reason of which George H. Cox was instantly killed. The train had been run from De Witt to Low Moor, a distance of ten miles, at fifteen and twenty miles per hour, the speed depending upon the grade; and, on nearing the west switch at Low Moor, it was slowed down to about fifteen to thirteen miles an hour.

Certain rules prescribed by the defendant for the government of its trainmen are in evidence. Rule 128 is as follows: "Freight and special trains must not pass over any switch at a speed exceeding ten miles an hour." The other four rules are as follows: Rule 399: "Whenever violent wind or rain storms prevail, or in case of sudden rise of streams, either by day or night, it will be the duty of the trackmen to get out with proper danger signals, and carefully examine the condition of the track, bridges, culverts, etc., and, in case they are not entirely safe, will flag approaching trains, and report the conditions to the train dispatcher from the nearest telegraph station." Rule 411: "Station agents, telegraph operators, and watchmen will immediately report to their respective division superintendents whenever there is a severe rainstorm or high wind or sudden rise of streams in the vicinity of their stations, and will see that the section foreman is on hand with his men to protect the track from damage. They will also examine the tracks near their stations to see that no damage has been done, and that the cars have not been moved by the wind, so as to endanger the passage of trains. They will remain on duty under the above-mentioned circumstances until dismissed. If, from any cause, the division superintendent's office

cannot be reached by telegraph, they will notify the roadmaster, if possible, and all moving trains in the vicinity, of the storm or danger." Rule 412: "Track foremen will immediately, on the occurrence of such storms or swelled streams, take their men, and proceed over their sections, carefully examining the track, all bridges, culverts, and openings; and if any place is found unsafe, and cannot be immediately repaired, they will leave a man, or more than one, if necessary, to flag approaching trains, and will at once report the condition of their track to the division superintendent's office, and to the roadmaster, from the nearest telegraph office." Rule 414: "Conductors and engineers on the road, when overtaken between stations by such storms or indications of high water which will cause damage, will proceed with great caution, keeping their trains under complete control, and at such speed that they can be stopped after coming in sight of any obstruction or damage to the track in time to prevent accident. They will also stop and examine bridges and culverts, or other places liable to be damaged by high water, and, if they find any indications of danger from proceeding with their trains, will, on arrival at the first telegraph station, call up the agent or operator, and report to the office of their respective division superintendent for instructions, and will not proceed until such instructions are received."

A section gang, with headquarters at Malone, had charge of a section extending east from Malone, to a point one-quarter of a mile east of the Brophy Creek bridge; and a gang, with headquarters at Low Moor, had charge of the section extending from that point to a point east of Low Moor.

II. We fully concur in the view expressed by the learned judge who presided at the trial, in passing upon the motion for a new trial, that this verdict

cannot be sanctioned; that, if plaintiff is entitled to recover at all, he is entitled to recover a much larger sum; and that the verdict is virtually a finding for the defendant. Surely, the plaintiff should not be prejudiced, nor the defendant benefited on this appeal, by the fact that the verdict is in form · in favor of the plaintiff. Thus viewing the verdict, we proceed to inquire whether the court erred in either of the respects assigned and argued. The grounds of plaintiff's motion for a new trial are, that the verdict is contrary to the evidence, contrary to the instructions, is the result of a compromise, and inadequate in amount; also, that the court erred in refusing to give the instructions asked by plaintiff. The only issue of fact, other than the amount of damages, is whether the defendant was guilty of negligence in either of the respects charged and relied upon, and, if so, whether such negligence was the direct and proximate cause of the death of George H. Cox. Of the several acts of negligence charged, only the following are relied upon: That the train was run over the section at a negligent and dangerous speed, and in violation of the rules prescribed; that the train was run at a negligent and dangerous speed over the switch where the accident happened, in violation of said rule 128; that defendant was negligent in not causing the said sections to be examined in advance of the coming of said train.

III. As to whether the train was run from De Witt to near Low Moor at a negligent speed we need not inquire, as there is nothing to show that the speed of the train from De Witt to Low Moor was the cause of the death of plaintiff's intestate. It does not appear but that the limb which caused the derailment would have been caught up and carried along as it was had the speed of the train been

less than it was. We think there is no evidence to sustain the first charge relied upon.

We have seen that the train was slowed to about thirteen to fifteen miles an hour in passing the switch, and that it was not intended to stop the train at the station of Low Moor. Plaintiff contends that this speed was in violation of said rule 128, and therefore presumably negligent, and that that speed was the cause of the derailment and turning over of the engine, and of the death of his intestate.

Appellee contends, and the evidence shows without conflict, that the purpose of rule 128 is to prevent rear-end collisions with cars or trains within station limits; that the reason for the rule is not that it is more dangerous to run over a switch of this kind than upon any other part of the track, but is that engines and trains may be under such control within station limits as that they can be stopped in time to avoid collisions with other trains or cars that may be on the track within station limits. Whatever may be the reason for the rule, we are clearly of the opinion that the speed of the train was not the cause of this accident, and that, with the limb carried along as it was, the accident would have occurred if the speed had been at the rate of three or five miles per hour less than it was. Had the speed been but ten miles per hour, the derailment and overturning of the engine would as surely have followed as it did at thirteen to fifteen miles per hour. We think, under the evidence as to the purpose of rule 128, and the construction given to it by employes, the engineer was not negligent in running at from thirteen to fifteen miles per hour over that switch; but, conceding that he was, we are clearly of the opinion that the limb, not the speed, was the direct and proximate cause of the accident.

As to the charge that the defendant was negligent in not causing the section to be examined in advance of the coming train, we have this state of facts: The train stopped but a short time at De Witt, and the storm started in while it was there, and lasted from twenty to thirty minutes. Though it had abated somewhat at the time the train left De Witt, at 8:20, it continued to blow with considerable violence up to the time of the accident, at 9 o'clock. It will be seen that but little more than twenty minutes elapsed between the commencement of the storm and the passage of the train over the Malone section, and only about forty minutes between its commencement and the accident. The tree from which the limb was blown that caused the accident stood immediately east of the Brophy creek bridge, and within the limits of the Malone section. Samuel Gilbert was employed as a trackman on that section, and testifies that they went in from their work for the night about 6 o'clock, but went out again between 8 and 9 o'clock. He says: "I can't tell exactly what time it was; it was during the time of the storm." He says that the train passed Malone as they were taking the car out of the house, and that they followed the train down as far as the end of their section. Now, it is apparent from this uncontradicted testimony that, within but little over twenty minutes after the commencement of this storm, these trackmen were out inspecting the track. The court refused an instruction submitting the question to the jury as to whether the section men at Malone were guilty of negligence in not making an inspection of the track before the train passed over it, and instructed the jury, in effect, as follows: That there was no evidence to justify a finding that the section-men at Malone were guilty of negligence in not making an inspection of the track before the train passed;

that there was no evidence that the inspection made was not made as soon as it could reasonably be done. While it is true that there is necessity for promptness on such occasions, and that the rules require promptness, and do not exempt employes from going into a storm, yet we think the brief time that elapsed between the commencement of the storm and the time that the sectionmen at Malone were out on the track justifies the instruction given and the refusal to give that asked. In other words, we are of the opinion that the plaintiff failed to establish this third charge of negligence.

After a careful examination of the record before us, we are led to concur in that further remark of the presiding judge that, in his judgment, under the evidence, this was an accident for which no one was to blame. We have examined the instructions refused in connection with those given, and fail to discover wherein any principle of law applicable to the facts of this case, presented in those asked, is not substantially embraced in those given. The instructions asked and refused are grounded largely upon the questions we have already considered and the refusal is sustained by what we have said. Though the verdict is not to be sanctioned, yet, treating it as virtually a verdict for the defendant, we think it is fully sustained by the evidence, or, in other words, that the plaintiff failed to establish his right to recover in any sum whatever, and, therefore, that the court did not err in refusing a new trial, and its judgment is AFFIRMED.